UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------- X
GOWRISH BOLLUR,                           :
                                          :   Case No.: _____
       Plaintiff,                         :
                                          :   **COMPLAINT**
   -against-                              :
                                          :   **DEMAND FOR JURY TRIAL**
INNERWORKINGS, INC., RICH                 :
STODDART, JACK M. GREENBERG,              :
CHARLES K. BOBRINSKOY, LINDSAY Y.         :
CORBY, DAVID FISHER, ADAM J.              :
GUTSTEIN, JULIE M. HOWARD, KIRT P.        :
KARROS, and MARC ZENNER,                  :
                                          :
       Defendants.                        :
----------------------------------------- X

Plaintiff, Gowrish Bollur ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This is an action brought by Plaintiff against InnerWorkings, Inc. ("InnerWorkings" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with InnerWorkings, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, in connection with the proposed merger (the "Proposed Merger") between InnerWorkings and HH Global Group Limited ("HH Global"). Plaintiff also asserts a claim against the Individual Defendants for breaching their fiduciary duty of candor/disclosure under state law.

2.      On July 15, 2020, InnerWorkings entered into an Agreement and Plan of Merger (the "Merger Agreement"), pursuant to which the Company's shareholders will receive $3.00 in

1

exchange for each share of InnerWorkings common stock they own (the "Merger Consideration").

3. On August 10, 2020, in order to convince InnerWorkings shareholders to vote in favor of the Proposed Merger, Defendants authorized the filing of a materially incomplete and misleading definitive proxy statement (the "Proxy") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act and in breach of the Individual Defendants' duty of candor/disclosure.

4. In particular, the Proxy contains materially incomplete and misleading information concerning: (i) financial projections for InnerWorkings; (ii) the valuation analyses performed by InnerWorkings' financial advisor, Citigroup Global Markets Inc. ("Citi"), in support of its fairness opinion; and (iii) the conflicts of interest faced by Citi.

5. The special meeting of InnerWorkings shareholders to vote on the Proposed Merger (the "Shareholder Vote") is forthcoming. It is imperative that the material information that has been omitted from the Proxy is disclosed prior to the Shareholder Vote so Plaintiff can cast an informed vote and properly exercise his corporate suffrage rights.

6. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and breach of the duty of candor/disclosure. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Merger until the material information discussed herein is disclosed to InnerWorkings' shareholders sufficiently in advance of the Shareholder Vote or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act and breach of the duty of candor/disclosure.

**JURISDICTION AND VENUE**

7. This Court has original jurisdiction over this action pursuant to Section 27 of the

Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

8. The Court has supplemental jurisdiction over the state law claim for breach of the duty of candor/disclosure pursuant to 28 U.S.C. § 1367.

9. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over the Defendants by this Court permissible under traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman* 764 F.2d 1309, 1305 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* At 1316

10. Venue is proper in this District under Section 27 of the Exchange Act and 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, InnerWorkings maintains offices in this District, InnerWorkings' common stock trades on Nasdaq stock exchange, which is headquartered in this District, and InnerWorkings hired Citi as a financial advisor and Morrow Sodali LLC as a proxy solicitor for the purposes of the Proposed Merger, both of which are also headquartered in this District rendering venue in this District appropriate. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

11. Plaintiff is, and at all relevant times has been, a holder of InnerWorkings common stock.

12. Defendant InnerWorkings is a global marketing supply chain company that provides global print management and promotional solutions to corporate clients across a range of industries. The Company's common stock trades on the Nasdaq stock exchange under the ticker symbol "INWK".

13. Individual Defendant Rich Stoddart is, and has been at all relevant times, the Chief Executive Officer and a director of InnerWorkings.

14. Individual Defendant Jack M. Greenberg is, and has been at all relevant times, a director of InnerWorkings and the non-executive Chairman of the Board.

15. Individual Defendant Charles K. Bobrinskoy is, and has been at all relevant times, a director of InnerWorkings.

16. Individual Defendant , Lindsay Y. Corby is, and has been at all relevant times, a director of InnerWorkings.

17. Individual Defendant David Fisher is, and has been at all relevant times, a director of InnerWorkings.

18. Individual Defendant Adam J. Gutstein is, and has been at all relevant times, a director of InnerWorkings.

19. Individual Defendant Julie M. Howard is, and has been at all relevant times, a director of InnerWorkings.

20. Individual Defendant Kirt P. Karros is, and has been at all relevant times, a director of InnerWorkings.

21. Individual Defendant Marc Zenner is, and has been at all relevant times, a director of InnerWorkings.

22. The Individual Defendants referred to in ¶¶ 13-21 are collectively referred to herein as the "Individual Defendants" and/or the "Board", and together with InnerWorkings they are referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### I. Background and the Proposed Merger

23. InnerWorkings is a marketing execution company. The Company's software applications and databases create an integrated solution that stores, analyzes and tracks the production capabilities of its supplier network, as well as detailed pricing data. The Company's segments include North America and International. The North America segment includes operations in the United States and Canada. The International segment includes operations in Mexico, South America, Central America, Europe, the Middle East, Africa and Asia. The Company procures products for clients across a range of industries, such as retail, financial services, hospitality, consumer packaged goods, non-profits, healthcare, pharmaceuticals, food and beverage, broadcasting and cable and transportation. The Company's clients are classified into over two categories, enterprise and transactional. The Company provides marketing materials to its transactional clients on an order-by-order basis.

24. HH Global is a global outsourced marketing execution provider. Applying proven processes, industry-leading technology, and the deep expertise of over 1,300+ employees, HH Global develops innovative solutions that drive down the cost of its clients' physical marketing procurement and content development, while improving quality, sustainability, and speed to market.

25. On July 16, 2020, InnerWorkings and HH Global issued a joint press release announcing the Proposed Merger, which states in relevant part:

**HH Global and InnerWorkings to Create Combined Global Marketing Services Company**

*All-Cash Transaction Valued at $3.00 Per Share; Represents 127% Premium to Closing Price and 104% Premium to the 90-Day Volume Weighted Average Price as of July 15, 2020*
*Combined Company to Provide Full End-to-End Marketing Solutions for Clients Across the Globe*

LONDON & CHICAGO--(BUSINESS WIRE)--Jul. 16, 2020-- InnerWorkings, Inc. (NASDAQ: INWK) ("InnerWorkings") and HH Global Group Limited ("HH Global") today announced that they have signed a definitive agreement to combine operations. Under the terms of the agreement, HH Global will acquire InnerWorkings for $3.00 per share in an all-cash transaction representing approximately $177 million in equity value. This represents a premium of 127% to the closing price, and a premium of 104% to the 90-day volume weighted average price as of July 15, 2020. The transaction has been unanimously approved by the Boards of Directors of both companies.

"Over the past several months, we've been taking actions to put InnerWorkings in the best position to weather the challenging environment in which we're operating," said Rich Stoddart, Chief Executive Officer of InnerWorkings. "In these times of significant economic uncertainty, the Board of Directors and management determined to undertake a comprehensive process to preserve and enhance value for shareholders. After exploring a range of financing and strategic alternatives, and implementing meaningful cost saving measures in response to the COVID-19 pandemic, we're confident this combination represents the best path forward for our shareholders and InnerWorkings. In addition to delivering an immediate cash premium to our shareholders, the combination will create a company with a stronger balance sheet and will enhance our ability to accelerate our transformation and serve our client base."

Robert MacMillan, Chairman and Group CEO of HH Global, said, "We are thrilled about this combination as it significantly accelerates our ability to execute on the next phase of our strategy by broadening our service offering and expanding our global reach. Not only do our two companies have complementary offerings, capabilities and geographic operations, but we also share a deep commitment to quality, innovation and operational excellence. We have long admired InnerWorkings and have got to know the management team well over the last few months, and we are confident that together we will create an even stronger company. We look forward to welcoming InnerWorkings to the HH Global family."

**Strategic Rationale**

The combination will result in a world-class marketing engineering and execution firm that is well-positioned to serve global clients seeking innovative, end-to-end marketing solutions that lower costs and improve brand consistency, visibility, sustainability and speed to market. With complementary offerings and capabilities, InnerWorkings' leading North American position and HH Global's strong leadership presence in EMEA and APAC, the combined company will operate with global reach and scale, maintaining the agility and client-focused execution that is core to both InnerWorkings and HH Global's strategic approach.

Together, the two companies will have a stronger operating model and balance sheet and will be well-positioned to continue InnerWorkings' transformation and to build and maintain long-term client relationships as a true first-choice partner for leading brands. In addition, the combined company will benefit from the support of funds managed or advised by Blackstone Tactical Opportunities, an existing strategic minority equity investor in HH Global.

**Additional Transaction Details**

Under the terms of the merger agreement, HH Global will acquire all of the outstanding shares of InnerWorkings common stock for $3.00 per share in cash which represents a premium of 127% to the closing price and a premium of 104% to the 90-day volume weighted average price as of July 15, 2020.

The transaction is subject to customary closing conditions, including approval by InnerWorkings' shareholders and receipt of certain regulatory approvals, and is expected to be completed before the end of the fourth quarter of 2020.

26. The Merger Consideration represents inadequate compensation for InnerWorkings shares. Indeed, the $3.00 Merger Consideration represents a 48% ***discount*** the Company's trading price in January 2020. It is therefore imperative that shareholders receive the material information (discussed in detail below) that Defendants have omitted from the Proxy, which is necessary for shareholders to properly exercise their corporate suffrage rights and cast an informed vote on the Proposed Merger.

//

## II. The Proxy Omits Material Information

27. On August 10, 2020, Defendants filed the materially incomplete and misleading Proxy with the SEC. The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision in connection with the Proposed Merger.

<u>The Misleadingly Incomplete Financial Projections</u>

28. First, the Proxy omits critical financial projections, including the net income projections for InnerWorkings (the "Net Income Projections"). Defendants elected to summarize the Company's financial projections, but they excised and failed to disclose the Net Income Projections. By disclosing certain projections in the Proxy and withholding the Net Income Projections, Defendants render the tables of projections on pages 61-62 of the Proxy materially incomplete and provide a misleading valuation picture of InnerWorkings. Simply put, net income projections are irreplaceable when it comes to fully, fairly, and properly understanding a company's projections and value.

29. Second, Company management originally prepared a set of financial projections in February 2020, referred to in the Proxy as the Original AOP. However, Defendants withheld those projections from the Proxy, and instead only disclosed the lower set of financial projections prepared in June 2020. When officers and directors prepare and review multiple sets of projections leading up to the sale of a company, each of those sets of projections are material to shareholders. The older projections are important, so that shareholders can understand how (and by how much) the Company's management has changed its mind about the future financial performance of the

Company and judge for themselves whether those adjustments are reasonable. This is especially true when a new lower set of projections is made towards the end of a sales process and then used by the Company's financial advisor to find the Merger Consideration "fair" to shareholders.

30.     Unlike poker where a player must conceal his unexposed cards, the object of a proxy statement is to put all one's cards on the table face-up. In this case only some of the cards were exposed—the others were concealed. If a proxy statement discloses financial projections and valuation information, such projections must be complete and accurate.  The question here is not the duty to speak, but liability for not having spoken enough.  With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. Accordingly, Defendants have disclosed some of the projections relied upon by Citi and the Board but have omitted the Net Income Projections and the Original AOP. These omissions render the summary of the projection tables and the Company's financial picture in the Proxy misleadingly incomplete.

<u>The Misleadingly Incomplete Summary of Citi's Fairness Opinion</u>

31.     The Proxy describes Citi's fairness opinion and the various valuation analyses performed in support of their opinion.  Defendants concede the materiality of this information in citing Citi's fairness opinion and their valuation analyses among the "material" factors the Board considered in making its recommendation to InnerWorkings shareholders. Proxy at 51; *see also* Proxy at 56-57 ("The summary of the financial analyses described below under this heading "—Financial Analyses" is a summary of the material financial analyses reviewed with the Board and performed by Citi in connection with Citi's opinion, dated July 15, 2020."). However, the summary of Citi's fairness opinion and analyses provided in the Proxy fails to include key inputs and assumptions underlying the analyses. Without this information, as described below,

9

InnerWorkings shareholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Citi's fairness opinion in determining how to vote on the Proposed Merger. *See* Proxy at 57 ("**Considering the data in the tables below without considering the full narrative description of the financial analyses, including the methodologies and assumptions underlying the financial analyses, could create a misleading or incomplete view of such financial analyses.**"). This omitted information, if disclosed, would significantly alter the total mix of information available to InnerWorkings' shareholders.

32. First, in summarizing the *Discounted Cash Flow Analysis* prepared by Citi, the Proxy fails to disclose the following key information used in the analyses: (i) the inputs and assumptions underlying the 13.0% to 15.2% discount rate range (including the values of the company-specific WACC/CAPM components); (ii) the inputs and assumptions underlying the 15.7% to 18.8% sensitivity discount rate range (including the values of the company-specific WACC/CAPM components); and (iii) the actual terminal values calculated for each analysis.

33. These key inputs are material to InnerWorkings shareholders, and their omission renders the summary of the *Discounted Cash Flow Analysis* incomplete and misleading. As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006). Such choices include "the appropriate discount rate, and the terminal value…" Id. As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of

>dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

Id. at 1577-78.

34. Without the above-omitted information InnerWorkings shareholders are misled as to the reasonableness or reliability of Citi's analysis, and unable to properly assess the fairness of the Proposed Merger. As such, these material omissions render the summary of the *Discounted Cash Flow Analysis* included in the Proxy misleadingly incomplete.

35. Second, in summarizing Citi's selected transactions analysis on page 58, the Proxy fails to disclose the identity of the selected companies and the multiple of each company utilized in the analyses. A fair summary of a comparable companies or transactions analysis requires the disclosure of the individual multiple for each company or transaction used in the analysis. Merely providing the range of the multiples that a banker calculated without any further information is insufficient, as shareholders are unable to assess whether the banker applied appropriate multiples, or, instead, applied unreasonably low multiples in order to present the Merger Consideration in the most favorable light. Accordingly, the omission of this material information renders the summary of this analyses provided in the Proxy misleading.

36. Third, in summarizing the *Selected Precedent Transactions Analysis*, the Proxy fails to disclose why Citi included equity ranges based off the Sensitivity NTM Adjusted EBITDA, or the values of the Company's Sensitivity NTM Adjusted EBITDA.

Citi's Conflicts of Interest

37. The Proxy fails to disclose the compensation Citi received or expects to receive from having provided financial advisory services in respect of certain potential transactions that were not consummated. Disclosure of "any compensation received or to be received as a result of the relationship between" a financial advisor issuing a fairness opinion and the subject company for that fairness opinion is required pursuant to 17 C.F.R. § 229.1015(b)(4). Moreover, it is important for shareholders to be able to understand what factors might influence the financial advisor's analytical efforts. A financial advisor's own proprietary financial interest in a proposed transaction must be carefully considered when assessing how much credence to give its analysis. A reasonable shareholder would want to know what important economic motivations that the advisor, employed by a board to assess the fairness of the transaction to the shareholders, might have.

38. On page 59 the Proxy states that within the past two years Citi "provided financial advisory services in respect of certain potential transactions that were not consummated." Yet, inexplicably, the Proxy fails to disclose the amount of the of the fees Citi received or expects to receive. This omission flies in the face of the disclosure requirements of the Exchange Act and provides a misleadingly incomplete summary of Citi's conflicts of interest. Therefore, the omission of the above information renders the statements provided on pages 58-59 of the Proxy, and potentially the Citi's fairness opinion, misleadingly incomplete, and in violation of Item 1015.

39. In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act and the Individual Defendants' duty of candor/disclosure. Absent disclosure of the foregoing material information

prior to the forthcoming Shareholder Vote, Plaintiff will be unable to cast an informed vote regarding the Proposed Merger, and is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I
### Against All Defendants for Violations of Section 14(a) of the Exchange Act

40. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

42. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

43. Item 1015 of Regulation M-A requires "[a]ny report, opinion or appraisal relating to the consideration or the fairness of the consideration to be offered to security holders or the fairness of the transaction to the issuer or affiliate or to security holders who are not affiliates" to "[d]escribe any material relationship that existed during the past two years or is mutually understood to be contemplated and any compensation received or to be received as a result of the

13

relationship between: (i) The outside party, its affiliates, and/or unaffiliated representative; and (ii) The subject company or its affiliates." 17 CFR § 229.1015.

44. The omission of information from a proxy will violate Section 14(a) if other SEC regulations specifically require disclosure of the omitted information.

45. Defendants have issued the Proxy with the intention of soliciting the Company's common shareholders' support for the Proposed Merger. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) financial projections for InnerWorkings; (ii) the valuation analyses performed by Citi in support of its fairness opinion; and (iii) the conflicts of interest faced by Citi.

46. In so doing, Defendants made misleading statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

47. The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger; indeed, the Proxy states that Citi reviewed and discussed their financial

analyses with the Board, and further states that the Board considered the financial analyses provided by Citi, as well as their fairness opinion and the assumptions made and matters considered in connection therewith. Further, the Individual Defendants were privy to and had knowledge of the financial projections and the details surrounding the process leading up to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review Citi's analyses in connection with their receipt of the fairness opinion, question Citi as to their derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

48.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

49.     InnerWorkings is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

50.     The misrepresentations and omissions in the Proxy are material to Plaintiff, who

will be deprived of his right to cast an informed vote on the Proposed Merger if such misrepresentations and omissions are not corrected prior to the special meeting of InnerWorkings' shareholders. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II
### Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

51. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

52. The Individual Defendants acted as controlling persons of InnerWorkings within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

53. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act

violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger. They were thus directly involved in preparing this document.

55. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

56. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

57. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

58. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

### COUNT III
### Against the Individual Defendants for Breach of the Fiduciary Duty of Candor/Disclosure

59. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

60. By virtue of their role as directors and/or officers of the Company, the Individual Defendants directly owed Plaintiff and all Company shareholders a fiduciary duty of

candor/disclosure, which required them to disclose fully and fairly all material information within their control when they seek shareholder action, and to ensure that the Proxy did not omit any material information or contain any materially misleading statements.

61. As alleged herein, the Individual Defendants breached their duty of candor/disclosure by approving or causing the materially deficient Proxy to be disseminated to Plaintiff and the Company's other public shareholders.

62. The misrepresentations and omissions in the Proxy are material, and Plaintiff will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Where a shareholder has been denied one of the most critical rights he or she possesses—the right to a fully informed vote—the harm suffered is an individual and irreparable harm.

63. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the special meeting of InnerWorkings shareholders to vote on the Proposed Merger or consummating the Proposed Merger, until the Company discloses the material information discussed above which has been omitted from the Proxy;

B. Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C. Awarding Plaintiff the costs and disbursements of this action, including reasonable

attorneys' and expert fees and expenses; and

    D.    Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: August 14, 2020

**MONTEVERDE & ASSOCIATES PC**

  */s/ Juan E. Monteverde*
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*